IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>TRISTAN JAMAL GRANT,<br><br>                      Defendant. | Case No. 3:21-cr-00027-TMB-MMS<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT** |

## I.    INTRODUCTION

This matter came before the Court for a bench trial, which commenced and ended on April 27, 2021.[1] The United States of America charged Defendant Tristan Jamal Grant with one count of Escape by Prisoner in Custody, in violation of 18 U.S.C. § 751(a).[2] At the conclusion of the trial, the Court took the matter under advisement for deliberation and decision. Having heard and carefully considered the evidence and argument presented at trial, and all briefings and stipulations, and in accordance with Federal Rule of Criminal Procedure ("Rule") 23(c), the Court now renders its verdict.

## II.    PROCEDURAL HISTORY

This criminal action arises out of an alleged escape by a pretrial detainee, Grant, while in the custody of a third-party custodian.

---

[1] Dkt. 32 (Minutes).

[2] Dkt. 2 (Indictment). The United States initially charged with Grant with Escape and with Failure to Appear, in violation of 18 U.S.C. § 3146(2)(a), (b)(1)(A)(i), (b)(2). *Id.* at 1–3; Dkt. 24 at 2 (Gov't Trial Brief).

On December 18, 2018, Grant was charged by complaint in Case Number 3:19-cr-00003-RRB-MMS-1 with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).[3] On December 21, 2018, Grant made an initial appearance before Magistrate Judge Scoble, an Order of Detention was entered, and Grant was detained at the Anchorage Correctional Complex ("ACC").[4] On January 15, 2019, the Grand Jury returned an indictment charging Grant with Felon in Possession of a Firearm and Ammunition.[5] Multiple superseding indictments were filed, adding counts of Sexual Exploitation of a Child/Production of Child Pornography, Sex Trafficking of a Minor, and Conspiracy to Engage in Sex Trafficking of Minors.[6] Grant filed a Motion for Release on February 11, 2021, for the limited purpose of meeting with his legal counsel on three separate days: February 16, 18, and 19, 2021.[7] The Court held a hearing and granted the Motion for Release.[8] The Court issued a separate Order setting conditions of release ("Conditions of Release Order") and an Order of Release ("Release Order").[9] The Release Order stated, in part, that Grant "met the bail conditions indicated below and is ordered discharged from custody" and released into the custody of "Monte Hernandez, the third-party custodian" on Tuesday, February 16, 2021

---

[3] Case No. 3:19-cr-00003-RRB-MMS-1 (filed on Jan. 15, 2019) (Dkt. 1) (Complaint).

[4] Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 12) (Detention Order); *see* Dkts. 23 at 3, 5 (Defendant's Proposed Findings of Fact & Conclusion of Law); 24-1 at 6–7 (United States' Proposed Findings of Fact & Conclusion of Law).

[5] Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 20) (Indictment).

[6] Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 34) (First Superseding Indictment); (Dkt. 55) (Second Superseding Indictment); (Dkt. 61) (Third Superseding Indictment); (Dkt. 68) (Fourth Superseding Indictment).

[7] Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 159) (Motion for Release); *see also* Dkt. 24-1 at 3.

[8] Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 166) (Minute Entry); (Dkt. 168) (Release Order).

[9] Case No. 3:19-cr-00003-RRB- MMS-1 (Dkt. 167) (Conditions of Release Order); (Dkt. 168).

by 10:00 a.m. and is to self-remand by 5:00 p.m. on Tuesday, February 16, 2021."[10]

The Conditions of Release Order stated, in relevant part:

> [A violation] may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine or both. . . . If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.[11]

A. *Alleged Escape*

On February 16, 2021, Grant was released from ACC pursuant to the Court's Release Order.[12] Grant was picked up from ACC by PI Hernandez, who had been hired by Grant's defense counsel and who transported Grant to the law office of James Wendt.[13] After leaving Mr. Wendt's office and before returning to ACC, Grant left PI Hernandez's presence, and PI Hernandez called the Anchorage Police to report Grant had left.[14] On February 17, 2021, Grant was arrested in a room at the Inlet Tower Hotel & Suites.[15]

On February 18, 2021 an Indictment was handed down in the present case charging Grant with, Escape by Prisoner in Custody, in violation of 18 U.S.C. § 751(a) ("Count 1") and Failure to

---

[10] Case No. 3:19-cr-00003-RRB- MMS-1 (Dkt. 168).

[11] Case No. 3:19-cr-00003-RRB- MMS-1 (Dkt. 167).

[12] *See* Dkt. 22 at 4.

[13] Dkts. 22 at 4; 24-1 at 3.

[14] Dkts. 22 at 4; 24-1 at 4.

[15] Dkts. 22 at 4; 24-1 at 5–6.

Appear, in violation of 18 U.S.C. § 3146(2)(a), (b)(1)(A)(i), (b)(2) ("Count 2").[16]

Grant waived his right to trial by jury in writing.[17] The United States consented and the Court approved the same as required by Rule 23, allowing the case to be tried by the Court.[18] The United States dismissed Count 2 of the Indictment, Failure to Appear, during the Final Pretrial Conference.[19] A one-day bench trial commenced on April 27, 2021.[20]

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Grant was charged with Escape by Prisoner in Custody, in violation of 18 U.S.C. § 751(a). Pursuant to U.S.C. § 18 U.S.C. § 751(a),

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]

For Grant to be found guilty under § 751(a), the United States must prove three elements beyond a reasonable doubt:

(1) Grant was in the custody of the Attorney General or his authorized representative, or

in the custody of an institution or facility in which he is confined by direction of the

---

[16] Dkts. 2 (Indictment); 24 at 2. On April 14, 2021, following a bench trial, Grant was convicted of the charges in Case Number 3:19-cr-00003-RRB-MMS-1. Case No. 3:19-cr-00003-RRB-MMS-1 (Dkt. 214) (Findings of Fact, Conclusion of Law, & Verdict); (Dkt. 216) (Minute Entry).

[17] Dkt. 29 (Waiver).

[18] *Id.*

[19] Dkt. 31 (Minute Entry).

[20] Dkt. 32.

Attorney General;

(2) Grant was in custody pursuant to process issued under the laws of the United States by any court; and

(3) Grant knowingly and voluntarily left custody without permission.

The Court will discuss its factual findings, Grant's Rule 29 motion, and finally, its conclusions of law.

**A. Factual Findings**

The evidence presented by the United States at the April 27, 2021 bench trial established, beyond a reasonable doubt, each of the elements of Count 1 of the Indictment.

The United States established that Grant was in custody at ACC prior to his release to PI Hernandez on February 16, 2021, and that ACC was under contract with the United States Marshals Service to house federal detainees. Grant stipulated at trial that he was charged in 3:19-cr-00003-RRB-MMS-1 with ten felonies. The United States called Deputy United States Marshal James Johnson ("Deputy Marshal Johnson"), who testified that a Magistrate Judge or District Court Judge ordered Grant be detained pending trial for his federal felony charges. Grant stipulated to the admission of the signed Order of Detention Pending Hearing (Government Exhibit 2) and the Order of Detention Pending Trial (Government Exhibit 3). [21] The Order of Detention Pending Trial states that Grant "is remanded to the custody of the Attorney General's designated representative[.]"[22] The United States established that ACC houses federal detainees and inmates pursuant to an intergovernmental agreement. Deputy Marshal Johnson testified that the Marshals

---

[21] Gov't Ex. 3 at 2 (Order of Detention Pending Trial) (Magistrate Judge Scoble found that the United States proved by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.").

[22] *Id.* at 4.

5

contract with the Alaska Department of Corrections and that the Department of Corrections is entitled to a daily dollar amount per federal detainee housed in ACC. Grant stipulated to the admission of Government Exhibit 4, which is an intergovernmental agreement establishing the relationship between the Alaska Department of Corrections and the United States Marshals Service.[23] The Federal Bureau of Prisons ("BOP") is listed as an "Authorized Agency User" under the agreement.[24] Grant questioned Deputy Marshal Johnson regarding certain transportation requirements for individuals in the custody of ACC, but did not put in doubt the relationship between ACC, the Marshals Service, and BOP. There is no doubt that Grant was in custody under § 751(a)(1) and (2) prior to his release to PI Hernandez.

The United States established that Magistrate Judge Scoble issued a Release Order on February 12, 2021 (Government Exhibit 8), whereby Grant was "released to Monte Hernandez on Tuesday, February 16, 2021 by 10:00 a.m. and is to self-remand by 5:00 p.m. on Tuesday, February 16, 2021."[25] Judge Scoble also issued an Conditions of Release Order setting out more specific conditions of release (Government Exhibit 9).[26] Grant stipulated to the admission of both Exhibits. The Conditions of Release Order contains the following limitations, among others, on Grant's release:

- Grant is placed in the custody of Monte Hernandez.
- Grant must "[t]ravel directly from ACC to Law Office of James Wendt, and directly back to ACC."

---

[23] Gov't Ex. 4 at 1 (Detention Services Intergovernmental Agreement).

[24] *Id.*

[25] Gov't Ex. 8 at 1 (Release Order).

[26] Gov't Ex. 9 (Conditions of Release Order).

- Grant must avoid all contact with any individual "who is or may be a victim or witness in the investigation" relating to case 3:19-cr-00003-RRB-MMS-1.
- Grant must return to custody "each day at 5:00 o'clock after being released at 1000 [sic] o'clock for the following purposes: Meeting with counsel."
- Grant must "be in the sight and sound presence of [PI] Hernandez or James Wendt at all times, when not in custody[.]"[27]

The United States also established that Magistrate Judge Scoble held a hearing on February 12, 2021, addressing Grant's Motion. Grant was present and heard Magistrate Judge Scoble authorize Grant's release for a limited purpose and into the custody of PI Hernandez. PI Hernandez testified that Magistrate Judge Scoble addressed Grant and explained the conditions of the limited release, and Grant acknowledged his understanding. According to the Conditions of Release Order, Grant was also advised of, and acknowledged, the conditions of release.[28] Grant was advised that violating "the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both."[29] Finally, the Conditions of Release Order, under "Directions to the United States Marshal," states that "[t]he defendant may remain released on his/her own recognizance."[30] PI Hernandez testified that under the Conditions of Release Order, he was to pick up Grant from ACC by 10:00 a.m. on February 16, 2021, escort him to Mr. Wendt's law office, and then return Grant to ACC by 5:00 p.m.

---

[27] *Id.* at 2.

[28] *Id.* at 3.

[29] *Id.*

[30] *Id.*

The United States, through the testimony of PI Hernandez, established that Grant was released from ACC prior to 10:00 a.m. on February 16, 2021, and driven by PI Hernandez to the law office of Grant's attorney, Mr. Wendt. On cross examination, PI Hernandez testified that he is not a law enforcement officer nor was he deputized by the Marshals Service to escort Grant to Mr. Wendt's office. PI Hernandez also testified that when he picked up Grant, Grant was wearing civilian clothing and that there was no requirement that Grant be restrained. PI Hernandez also stated that he did not carry restraints such as handcuffs with him.

The United States established that Grant was not in custody of ACC at 5:00 p.m. on February 16, 2021. First, PI Hernandez testified that Grant stayed at Mr. Wendt's law office until 4:40 p.m. and that Grant was in the sight and sound of either PI Hernandez or Mr. Wendt at all times, except for when Grant was confined to the restroom. PI Hernandez testified that at 4:40 p.m., he and Grant returned to PI Hernandez's car, which was parked on the street outside of the building where Mr. Wendt's law office is located. PI Hernandez testified that Grant put paperwork into the passenger seat of PI Hernandez's car, and then ran away. PI Hernandez testified that per Judge Scoble's instructions, he called 911 to report that Grant ran away and then returned to ACC and explained to ACC personnel what occurred.

Staff Sergeant Ian Losby of the Department of Corrections testified that Grant was not back at ACC by 5:00 p.m. on February 16, 2021. Sgt. Losby testified that PI Hernandez returned to ACC alone. He also testified that the daily practice at ACC is to conduct a count of detainees at 5:30 p.m., and that Grant was not back for the 5:30 p.m. check on February 16, 2021. Sgt. Losby testified that Grant did eventually return but that he did not know when.

Ms. Cassandra Romig, Director of Guest Services and Sales at Inlet Tower Hotel, testified and through her testimony the United States admitted Government Exhibit 11, to which there was

8

Case 3:21-cr-00027-TMB-DMS   Document 34   Filed 06/04/21   Page 8 of 16

no objection. Government Exhibit 11 is a copy of the "Folio Properties Change Journal" for Inlet Tower Hotel.[31] The Change Journal shows a reservation made by Julissa Carter and entered at 7:21 a.m. on February 17, 2021.[32] Ms. Romig testified that the Change Journal is an internal record that logs all of the details of each reservation, including any changes made. Government Exhibit 11 indicates that the reservation was for two adults in Room 302.[33]

FBI Special Agent Chris Gonzales ("SA Gonzales") testified that he was part of the swat team that was called to the Inlet Tower Hotel on February 17, 2021, to arrest Grant. He testified that he was asked to execute the warrant for Room 302. He testified that after knocking and announcing his presence, a woman came to the door and confirmed that Grant was in the room. SA Gonzales testified that Grant came out of the bathroom, and that SA Gonzales and other agents secured Grant and then handcuffed him.

FBI Special Agent Katherine Nelson testified that she listened to several phone calls made by Grant from ACC prior to February 16, 2021, at Government Exhibits 15, 19, and 20, all of which the Court admitted into evidence over Grant's objection. SA Nelson testified that she recognized the calls as being between Grant and Ms. Carter. The Court heard excerpts from the phone calls, with SA Nelson providing context, the contents of which included Grant telling Ms. Carter he might soon be out of custody and "loose as a goose," asking Ms. Carter questions about her car, asking Ms. Carter details about the location and layout of Mr. Wendt's law office.

### B. Rule 29 Motion

---

[31] Gov't Ex. 11 (Change Journal).

[32] *Id.* at 1.

[33] *Id.*

9

Following trial, Grant moved for acquittal under Rule 29 for failure to present sufficient evidence. Grant argued that when he was released from ACC and picked up by PI Hernandez (who was not a law enforcement officer or representative of the Attorney General), he was not in "custody" for purpose of § 751(a). Grant argued that as a pretrial detainee under the Bail Reform Act, a court many either (1) order a defendant detained or (2) release a defendant and impose conditions of release.[34] Grant argued that once Magistrate Judge Scoble granted Grant's Motion for Release from his pretrial detention, and Grant was released on personal recognizance, he was discharged from custody. Accordingly, in leaving PI Hernandez's presence, Grant did not "escape" because he was not in custody under § 751(a); he could therefore only be charged with violating the conditions of his release or be held in contempt of court.

The United States responded that prior to 5:00 p.m. on February 16, 2021, after Grant left PI Hernandez's sight and presence, he was in violation of his conditions of release. However, the United States argued, at 5:00 p.m. that day, Grant was an escaped inmate from ACC. The United States pointed to the Conditions of Release Order, which orders Grant to self-remand to ACC by 5:00 p.m. on February 16, 2021. The United States argued that Grant was released for a limited time and purpose, to meet with his attorney in preparation for trial, and was not housed in a residential facility or otherwise released. When Grant failed to return to ACC by 5:00 p.m., the United States argued the only available sanction was prosecution for Escape from Custody under

---

[34] Under the Bail Reform Act, "[u]pon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial," the individual charged be: (1) released on his personal recognizance; (2) released on a certain conditions; or (3) detained. 18 U.S.C. § 3142(a). The judicial officer determining release may condition release of the individual charged on "remain[ing] in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court[.]" 18 U.S.C. § 3142(c)(B)(i).

§ 751.

Grant argued that the Ninth Circuit cases of *United States v. Baxley* and *United States v. Burke* establish a narrow definition of "custody" under § 751(a).[35] In *Baxley*, a defendant was released from pre-trial custody after being indicted for transporting a stolen vehicle across state lines "on a personal recognizance bond with various special conditions attached."[36] One of the conditions was that the defendant reside at a halfway house.[37] The defendant signed an agreement to "adhere to the rules and regulations of the Center."[38] Though the defendant was free to "come and go as he pleased during the day[,]" he was required to disclose the "time, duration, and purpose of his visits to the outside world."[39] One day, the defendant signed out of the halfway house and did not return; he instead went to live with his sister.[40] A warrant was issued for his arrest and he was subsequently convicted of Escape in violation of § 751(a).[41]

The defendant challenged his Escape conviction, arguing that he was not in "custody" under § 751(a).[42] The Ninth Circuit agreed and reversed the conviction.[43] It reasoned that the

---

[35] *See United States v. Baxley*, 982 F.2d 1265, 1269–70 (9th Cir. 1992); *United States v. Burke*, 694 F.3d 1062, 1064–64 (9th Cir. 2012).

[36] *Baxley*, 982 F.2d at 1266.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 1267.

[41] *Id.*

[42] *Id.* at 1269–70.

[43] *Id.* at 1270.

defendant was released "pursuant to the conditions of a personal recognizance bond[,]" "[t]he restrictions on [defendant's] activities were slight[,]" and the restrictions were "much more analogous to probation than they were to imprisonment[.]"[44] It also noted that in the "Order Setting Conditions of Release[,]" the district judge "did *not* check the box that stated that 'the defendant is placed in the custody of' a given institution . . . [i]f the judge had intended to place [the defendant] in custody, he would have marked the box that explicitly provided for such custodial incarceration."[45]

Grant argued that *Baxley* is analogous to his case because, like in *Baxley*, Grant was discharged from custody and released on personal recognizance. Grant argued that even if his conditions of release were stricter than in *Baxley*, Magistrate Judge Scoble still issued a Release Order. Grant also pointed out that the Conditions of Release Order does not list prosecution for Escape among the potential penalties for violating the conditions of release. The United States responded by arguing that *Baxley* is distinguishable because unlike in *Baxley*, here Magistrate Judge Scoble placed Grant in the custody of PI Hernandez and conditioned Grant's release on returning to ACC by 5:00 p.m. each day. The United States argued that Grant was not released to a halfway house, like in *Baxley*, or other types of less restrictive arrangements—he was released for the limited purpose of meeting with his attorney.

Grant also argues that *Burke* is instructive, insofar as it shows that the Ninth Circuit narrowly interprets "custody" under § 751(a). In *Burke* the defendant was ordered to reside in a halfway house following his term of incarceration.[46] One day the defendant checked out of the

---

[44] *Id.* at 1269.

[45] *Id.* at 1270 (emphasis in original).

[46] *Burke*, 694 F.3d at 1063.

halfway house, did not return, and was subsequently arrested due to his violations of supervised release.[47] The defendant was charged with Escape under § 751(a) and the district court dismissed the indictment because the conditions of supervised release were "by no means, by letter or in spirit, a custodial order of the Court[.]"[48] The Circuit agreed, noting that the defendant was "free to be employed outside the [halfway house], and to come and go during the day with permission if they logged in and out."[49] The Circuit stated that the penalty for failing to return to the halfway house was a violation of his release conditions, not prosecution for Escape under § 751(a).[50] Finally, the Circuit rejected the Tenth Circuit's interpretation of "custody" under § 751(a), finding it to be "far broader than the one recognized by our Circuit" and "expansive."[51]

The United States distinguished *Burke* from the present case, noting that the restrictions on Grant were not akin to those at a halfway house and, instead, akin to incarceration. It argued that unlike in *Burke*, where the defendant was able to come and go, and have a job, here Grant was not free to do anything other than go from ACC to Mr. Wendt's office, and back. The United States argued that when Grant was not back at ACC at 5:00 p.m., per Magistrate Judge Scoble's order, he was liable for Escape under § 751(a).

The Court has closely reviewed *Baxley*, *Burke*, and related Ninth Circuit authority and agrees with the United States that at 5:00 p.m. on February 16, 2021, Grant was in "custody" under

---

[47] *Id.*

[48] *Id.* (quoting the district court).

[49] *Id.* at 1064.

[50] *Id.* at 1065.

[51] *Id.* at 1065 (discussing *United States v. Sack*, 379 F.3d 1177, 1181–82 (10th Cir. 2004)).

13

§ 751(a) and therefore an escaped detainee.[52]  Unlike in *Baxley* or *Burke*, where the defendants were permitted to reside at a halfway house so long as they complied with the rules of the house, here Grant was ordered to return to custody at ACC at 5:00 p.m. on February 16, 2021.[53]  Also unlike here, the *Baxley* and *Burke* defendants were never ordered to return to prison.  Grant had no freedom to "come and go" and visit the outside world as he pleased, and certainly not after 5:00 p.m.  Magistrate Judge Scoble issued the Conditions of Release Order for a singular purpose, which was to permit Grant to "[t]ravel directly from ACC to Law Office of James Wendt, and directly back to ACC" by 5:00 p.m.[54]  Grant was detained at ACC before being released to PI Hernandez to meet with Mr. Wendt and he was supposed to be detained at ACC beginning at 5:00 p.m.  The United States established at trial that Grant did not return to ACC at 5:00 p.m. on February 16, 2021.  Grant's chosen method of escape in this case does not change the fact that he was ordered to return to the custody of ACC, knew and understood this order, and did not return.

The question of whether Grant was in custody for purposes of § 751(a) between 10:00 a.m. and 5:00 p.m. on February 16, 2021 is a closer call.  Grant and the United States at trial agreed that Grant was not in an escaped status prior to 5:00 p.m. on February 16, 2021, but instead merely in violation of his conditions of release.  Since the Court concludes that Grant was in custody as of 5:00 p.m., and therefore was in an escaped status, it need not address the issue of his custodial

---

[52] *See, e.g.*, *United States v. Jones*, 569 F.2d 499 (9th Cir. 1978); *United States v. Keller*, 912 F.2d 1058 (9th Cir. 1990).

[53] *See* Gov't Exs. 9–10.  The Ninth Circuit subsequently emphasized that an important rationale for concluding the defendant in *Baxley* had not committed the offense of Escape was that "Congress did not intend § 751(a) as a punishment for persons who violated conditions of parole or bail because the government already had the authority to punish them by revoking their bail or parole." *United Sates v. Winn*, 57 F.3d 1078, 1995 WL 323748, at *1 (9th Cir. 1995) (mem. op.).  Here, as of 5:00 p.m. on February 16, 2021, Grant was not lawfully out on bail or parole.

[54] Gov't Ex. 9 at 2.

status between 10:00 a.m. and 5:00 p.m.

### C. Conclusions of Law

As to the first element, Grant was clearly in custody at ACC, held in pretrial detention in an environment akin to post-conviction incarceration. When Grant was released from ACC for the limited purpose of visiting his lawyer for a few hours to prepare for trial, Grant was subject to strict conditions, including that he could not leave the sight or presence of PI Hernandez or Mr. Wendt and that he must return to ACC by 5:00 p.m. that day. Grant was not residing at a halfway house or residential center and his limited release was not analogous to probation.[55] Accordingly, Grant was ordered to be in custody at 5:00 p.m. on February 16, 2021, and when he failed to return to ACC he was escaped. There is no dispute in the evidence that Grant failed to report to ACC at the required time.[56] He did so knowingly and intentionally when, after being instructed about the conditions of his release, he contacted Ms. Carter urging her to aide in his flight from Mr. Wendt's office, ran from PI Hernandez's presence, and was located in a hotel room prior to his arrest on February 17, 2021.

After consideration of the evidence presented, the Court finds that the United States established beyond a reasonable doubt that as of 5:00 p.m. on February 16, 2021, Grant was ordered to be in the custody of an institution or facility in which he is confined by direction of the Attorney General, pursuant to process issued under the laws of the United States by a federal judge in the District of Alaska, that Grant knowingly and voluntarily left custody without permission, and was out of custody until he was apprehended the following day at the Inlet Tower Hotel. Accordingly, Grant's Motion under Rule 29 is **DENIED** and Grant is **GUILTY** of Escape from

---

[55] *See Baxley*, 982 F.2d at 1269–70.

[56] *See Keller*, 912 F.2d at 1061.

Custody as charged in the Indictment.

## IV. VERDICT

Accordingly, for the reasons set forth herein, the Court **DENIES** Defendant Tristan Jamal Grant's Motion under Rule 29 and finds him **GUILTY** of Count One of the Indictment.[57]

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 4th day of June, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[57] Dkt. 2 at 1–2.